May it please the Court. I respectfully reserve five minutes for a rebuttal argument in this case. You'll have to speak up a little bit, Mr. Shuganti. Yes, Your Honor. I respectfully request to reserve five minutes for rebuttal in this case. My name is Narayan Shuganti. I represent the plaintiffs and appellants in this case. Your Honor, the principal issue in the case is whether the district court was correct in ruling that there was no subject matter jurisdiction in the district court and upon an application of the Federal Rule of Civil Procedure, Rule 9b, to the entirety of the complaint. A second issue is whether the district court correctly denied leave to amend the complaint and imposed a sanction of dismissal under Rule 41b. And there are ancillary issues. One additional issue is if there is subject matter jurisdiction in the district court, then whether the two defaulting defendants, there is a default against those two defendants. I will address the first issue first. There is subject matter jurisdiction in the federal court because a RICO claim is pled with sufficient information for the defendants to defend the case. There are several bases for this argument that I make. One is that two of the defendants actually answered the complaint, which indicates that they did not find information to be insufficient to marshal a defense. Another issue is whether a group of defendants known as the telecom defendants, which include the company itself, I2 Telecom, Paul Arena, Bernie Kosar, and others, whether they have waived any right to challenge the information within the complaint under Rule 9b by not asserting Rule 9b objection at the first instance that they obtained. And they did not in this case. They brought it up as an objection to the second amended complaint, not the first amended and not the original complaint. And, therefore, it is our position on that issue that the telecom defendants have waived it. The two answering defendants are the two accountant defendants, Mr. Jim Leimbach and the accounting firm of Strasser & Associates. The only group of defendants that have asserted Rule 9b at the first opportunity are the so-called attorney defendants, the law firm of Roberts, Aboukair, and Mardula. So based on this, if there is a federal subject matter jurisdiction for the district court against any one of these group of defendants, there ought to be supplemental pendant jurisdiction even as to the other claims within the same district court because the entirety comes under the same transaction or occurrence or common nucleus of operative facts theory. Therefore, the district court, it was an error for the district court to decline to exercise subject matter jurisdiction on this case. That is the first basis. The second basis is that we predicated the RICO claim under non-fraud predicate violations. These include the allegations under the Hobbs Act, for example, which deals with extortion, the claim under the Copyright Act, which deals with selling things that are copyrighted on which somebody else has owned copyright, and the Travel Act, which deals with engaging in interstate travel in order to commit other violations. Another basis for this district court's subject matter jurisdiction is predicated on the fact that the fraud, the RICO claim based on wire fraud and mail fraud, we gave an abundance of instances where telephones were used. This group of investors that came from Atlanta did not just come there. They used telephone calls, facsimiles. Let me start with the fraud allegations. Where are the allegations in your second amended complaint of fraud? The second amended complaint itself details all the actions that they took. I saw very, very detailed allegations of fact, including reproductions of what purport to be reproductions of conversations. And then I saw the specific counts, which very, very generally allege fraud without any reference to the prior findings of fact. So can you point to me very specifically where you answered the district court's questions, because he went through this a couple of times with you and gave you a couple of opportunities. He told you exactly what he wanted, and I don't see that you followed his instructions. So I'm trying to figure out where you did that. Can you point to me where the finding, where the facts are alleged, where you've alleged fraud as a fact? Well, fraud requires a representation. Point to me. Can you give me a I'm looking for paragraph or paragraphs where you've alleged that that a fraudulently represented something to be or a did something to be that that is that is fraudulent. For example, Your Honor, paragraph 39 on page 80 of the record, I alleged that convinced by these assurances of no conflict of interest from Roberts and relying on the statement that Roberts would file the patent application, said so-and-so, Mustofi asked Dante to stop working. So there is a reliance representation alleged. And if we go into the formation of this paragraph, 39 doesn't allege any kind of fraud. I can't read that and tell if there's somebody's alleged that somebody did something fraudulently. Fraud is alleged based on representation and reliance and damage. Exactly. And where does it say that paragraph says that I listed all the representations initially. And then we said that the it is implicit that the reliance is implicit, Your Honor. The representations are the only things that that are critical to be to be made under Rule 9B reliance. If I go to a car dealer and the car dealer sells me a car that that had, for example, hail damage or flood damage, which was subsequently repaired, and I tell the I go to the car dealer and he says, this is a brand new car with no damage to it. And I buy it. There is a reliance. There is a damage thereon. And it's only the representation. But you have to state some place in your complaint. I went to the car dealer and the car dealer represented to me X. And X is not true. And the car dealer knew it. And he is engaged in fraud. I'm looking for some kind of a paragraph that somehow relates your allegations of fraud as counts to your statement of facts. Okay. I believe we have time. I think that's what the district court asked you to do twice. And the complaint kept getting longer. But it's not clear that it got any longer. Your Honor, on page 118, for example, of the which is 48 and goes into page 119 of the second amended complaint, paragraph 273 actually lists a number of false statements. For a false statement that I2 Telecom was not formed for the purpose of investing in Supercaller. False statement that I2 Telecom was not. All right. Let's take 273A. You have a false statement that I2 Telecom was not formed for the purpose of investing in Supercaller. Now, do you have what paragraphs of findings of facts did you tell us who told what, who said that Telecom was formed for the purpose of investing in Supercaller? The agreements between the parties, Your Honor. It goes back into the referenced agreements that were between the parties. The share common stock purchase agreement explicitly makes this as a warranty. Okay. And where is that? That is an addendum attachment to the second amended complaint. And it is also referenced in the main body of the complaint. Okay. And did you advise the judge that paragraph 273A relied on the addendum to your second amended complaint? 273A. Did you tell us any place? As I read this, I'm looking for something that says, okay, Mr. Mostafavi has alleged that there was a false statement that I2 Telecom was formed for the purpose of investing in Supercaller. Now, where is the allegation of that? Where is the allegation of fact that relates to this? Yes. And page 79, Your Honor, we say that the share purchase was a material inducement to offer an exclusive license. And going below before that. So it's 79, which paragraph? Paragraph 30, for example, Your Honor. Paragraph 30 is yet another false statement. Though I2 Phone warranted and represented that it was an Internet telephony service provider and an, quote, international marketing organization, it was neither. Okay. And where did it warrant and represent this in paragraph 30? Pardon? I2 Phone is a corporation. It's not a person. Yes. Okay. Who was representing I2 Phone? Who warranted and represented that it was a service and that it was neither? The individual? Yes. Yeah. And what date did he do it on? Who made the representation in paragraph 30? The persons that Paul Arena. Okay. And anybody else? Bernie Kosar. Okay. Mr. Kosar. Mr. Zielinski. Okay. Everybody. And can you tell me what dates they made those allegations? Including Mr. Brian Harris involved in it. Who did they make the allegations to? Mr. Luliam and Mr. Mostofi. Okay. And where are those facts in this complaint? Paragraph 25, Your Honor. We go to that one. On or about May 12, 2002, Brian Harris called Luliam and Mostofi. Paul Arena was also on the conference call. In the phone call, Arena told Luliam and Mostofi that I2 Phone was an international marketing organization with experience in providing Internet telephony services. Arena told Luliam and told him that he, Arena, was impressed by the technology and wanted to invest in Supercaller. So these telephone calls, these were. . . I think the problem, though, is I recognize we can go through all of these and you can stitch them up with various parts of the complaint, but there's not a place here where you succinctly state that there was a representation, your clients relied on the representation, and to their detriment, and it was a false representation. You say it generically, but to put it together, and that's what the district court was asking you to do, to say, all right, on such and such a date, X made a statement to Y, the statement was false, that representation was relied on to the detriment, it was false and fraudulent, and it approximately caused damages. In retrospect, Your Honor, it has been more than a year since I was offered this matter. In retrospect, I think I should have done a very succinct, as the court said. I mean, you're unnoticed pleading for a lot of things, but when you're pleading fraud, you have to really plead it with specificity and let the court and the other parties know what you're talking about. You can't just throw a lot of representations around in a statement of facts, talk about reliance generically somewhere else, and say, okay, we've satisfied 9B. I may be wrong, but I think that's what Judge Bivey is getting at. The district court thought that it was too detailed at some point, and then faulted me for not being enough detailed. He told you, counsel, Rule 8A says that the complaint is to be stated in plain and simple terms. That's what it says. Paragraph 25 is just an enormous body of information there. There's just all kinds of things. If somebody was to try and respond to that, you'd have to go through every detail in parsing that paragraph. Very, very difficult to follow and to answer. How we marry up paragraph 25 with paragraph 30, I don't know. How was I supposed to figure out that paragraph 30 was relying on all the allegations in paragraph 25? And when I get back to paragraph 273A, how was I supposed to know that by reading paragraph 30 and paragraph 25, that those were the allegations that would support the claim of fraud in paragraph 273A? The district court gave you two chances. He told you very specifically what the problem was. He told you how many pages you could use. You didn't follow any of those instructions, did you? I believe I did, Your Honor. First of all, may I address that page issue? The first page was numbered, but it is a caption page. And when I was working, so I used this one-and-a-half line spacing throughout this, throughout the case up until the time the district court faulted the one-and-a-half line spacing. Well, I have to say, counsel, it's a little funny because he asked you to number your lines. And the lines that you've numbered appear to be in double space. But you've numbered your text in space and a half, so the lines don't look like they line up. They do, Your Honor. Do they line up? Page 77, for example, of the record, every page, they line up. Well, I've got some here, but I see on page 77 looks like it's okay. 78. 79 I've got problems with. I can see that things don't line up there. That's because there is. I've got something on line three-and-a-half, for example. That's because there is some block quotes in it coming from other places, so that kind of altered the thing. May I switch topics for a minute? Do you have a case that indicates that a copyright violation can constitute a predicate act under RICO? The way I understood the Digital Millennium Copyright Act, Your Honor, the copyright violation, I believe in the year 2000, the Congress amended and added. Yes, they did. I just wondered if you had a case on that. I have not seen, Your Honor. Now, let's talk about the copyright infringement. You would agree that at least in title, a super-caller owns the copyright. Is that right? I disagree with that statement, Your Honor. Who has the title of the copyright? Pardon me? Who owns the copyright right now? Now, Stoffi had some software written at his home prior to even joining this company. He brought that code, and he embedded it into this company. Right. Did he make any copyright applications? He did not, Your Honor. He doesn't hold paper title, as we would say, to the copyright on anything, right? He doesn't. The corporation does. I don't know if the corporation even filed a copyright application on that. It is a common law copyright that he owns, and he brought his own code into the company, and therefore, when the company merged its code with his code, he still retains a little bit of copyright. And the second claim of copyright we have is when they take over the entire company from the owners, then they are also, once again, shipping copyright in interstate commerce. May I explain the complaint itself, Your Honor? I want to get into this. I got so many details that I wanted the defendants to know exactly what we are alleging, so I separated all the factual parts separately, point by point. This is what you said. This is when you said. This is what happened. And then separated all the legal part in a different way, so I actually thought I was doing them a favor by separating the ñ they can just say, I didn't say this, I didn't say this, and deny each one of these things separately, or if the paragraph doesn't even apply to them, they could say this doesn't apply to me, and then go and deny on the legal allegations. I thought I was being highly efficient. I spent a lot of time trying to put this enormous body of information so that they can decide whether they can marshal a defense. It turns out that the district court disagreed with me on that issue. I still believe that it is not a badly written complaint, except that there are a lot of details in it, and I thought that the details would be useful to the defendants in that sense. Your Honor, one more basis for which I request, I believe that Rule 9b should not be applied any further, because many of the facts that we don't know are not with us. They are with the defendant's control, and there is case law from other circuits that I cited in the briefs that says if the allegations that are particularly in the control of a defendant, a plaintiff is to the extent that discovery did not reveal them, the plaintiff should be excused from alleging them with particularity, because he doesn't have it. And one final point, Your Honor, before I address. One of the things is the 41b sanction. The district court did not give leave to amend. This one-and-a-half line spacing was my oversight. I was practicing patent law, and when I did patent applications, my senior partner at the Penny Edmonds Law Firm told me to use one-and-a-half line spacing instead of double spacing so that you can save some trees, which I carried that instruction in the back of my head, and I used that instruction in writing these complaints. It's not an impossible task to cut down a few details in order to trim it or maybe press-write it or even write the whole thing in maybe ten pages. My only intention in this thing, not to violate the district court's order or to transgress any instruction that the district court gave, but instead to give as much information as possible because I realize that we are making very damaging, extremely harmful allegations against the defendants, impugning their character and their behavior in the commercial world, and some of the defendants are attorneys, and I feel that I should be as forthcoming as possible in putting everything on the table, lay all the cards down there, and then decide whether they have any violation there. Thank you, Your Honor. I'm afraid you're a little over your time. Thank you very much. Do you have a time allocation? Yes, we do, Your Honor. My name is Catherine Deamer, and I'll take nine minutes. Okay. Could I ask you to speak loudly? I will, Your Honor. I'm actually fairly loud normally. Good. Does this work for you? Perfect. That's good. It's pretty rare somebody asks me to speak up, so thank you for reminding me to do so. I'm here today, Your Honors, on behalf of what are known as the Telcom defendants, that is I2 Telcom, Paul Arena, Bernard Kosar, Anthony Zelensky, Alex Zeprescu, and Ron Roswell Sr., Doug Bender, and Audrey Braswell. All right. What do you want to talk to us about in your nine minutes? What I want to talk about here today, Your Honor, is that due process is a double-edged sword. It is not just for the plaintiff. The plaintiff comes to you today arguing that it was unfair of Judge Walker to terminate his rights to proceed with the case. But as Your Honors have noted in asking questions to Mr. Chiganti, there were significant problems for the defendants because of the extremely verbose and complex nature of the three complaints which he filed. I was, in fact, trial counsel for the Telcom defendants, as well as standing before you as the appellate counsel. And I cannot tell you how difficult it was to ferret through these voluminous pleadings. It was very difficult. And it caused significant problems for our defendants. It caused problems when we were required to produce documents because we couldn't figure out to what he was referring. There were so many people. Every time a complaint was filed, there were new people and new parties added. When the judge would ask him to make it shorter and more specific, the judge didn't just ask him to replete. Judge Walker gave him extremely specific instruction on what he wanted to see. And yet he did not get that. How far did discovery progress when the case was dismissed? We had done several rounds of requests for production of documents. We had not done any depositions. Judge Walker sent the matter over to Judge Brazil, the magistrate, Judge Brazil, in order to monitor discovery. Judge Brazil put on a requirement that the documents be exchanged prior to any depositions. That's where we were. Okay. Thank you. And discovery was closed, I believe, by the time this was heard. But there were indications and argument by Judge Walker. That's what puzzled me. It appeared to me that the discovery had already closed on this case. It's rather odd to be considering an amended complaint after discovery had closed. But it didn't seem to be that there had been any depositions taken. So I found that puzzling. There was, in fact, it was a problem in the case. There was some indication and argument that Judge Walker would reopen should the third complaint, i.e., the second amended complaint, which is the third one, actually, if he succeeded in pleading it, that he would reopen. But at this point, you had actually finished. There's no question that the initial discovery deadline set in the scheduling order had passed. Absolutely, Your Honor. I see. That's correct. In fact, it had passed, and then it was reopened again to continue for a period of time. And there were specific strictures. There was actually a stipulation among the parties to allow it to reopen and continue because of the bar put in place by Judge Brazil to try to control the document production issues, which were very difficult indeed. Well, there are a lot of defendants. It's hard to keep track of them. But is Irina one of your clients? Mr. Irina is, in fact, one of my clients, Judge. Now, you've got the RICO allegations in Count 24. And then if you want to end the counts incorporate, by reference, the first 124 factual statements. Then if I look back to the record of 89, I see Irina was said to have threatened him with death. That seems to me a very specific racketeering threat at a very specific time and place. Why can't you defend against that? Were I to be aware of when such statement happened? If I were aware of when it happened, who said it? Oh, yes. It tells you right there in paragraph 89. It's the supercall meeting. Yes. Supercell meeting. Yeah. It was the supercaller meeting, Your Honor. Supercall, yeah. They tell you who did it, where he did it. Everything is spelled out. So what's the problem? Well, on that particular item, it simply wasn't true, Your Honor. Oh, it isn't true. That goes to a trial. You're right. I mean, you can say that. But what is wrong with making a slight ‑‑ I mean, it doesn't require much effort to integrate paragraph 89 with racketeering. Well, it does require some, however, Your Honor. What? It does require some, Your Honor. Oh, so that's too much for you? No. No, notice is notice. I'd say this is pretty good notice. Your client is accused of threatening murder. Your Honor, there were ‑‑ You could defend against it, but you can't say it isn't true. There were numerous people at that meeting, and ‑‑ I think Judge Noonan's question is somewhat different. We're talking about the pleading, not defending the facts, because obviously you would contest this. But in a normal case of racketeering, what are you saying? Were so many friends to kill you, extortion? That's the stuff of a legitimate RICO predicate act, right? It is, Your Honor. So why doesn't that survive in this case? Because in this particular case, you have to demonstrate that it was part of a plan. You have to meet all the elements of RICO, not just one. He doesn't do that. Well, but wait a minute. He's got other allegations there, but he can't allege everything in one breath. Here is the climax, a threat to murder. You can look back a couple of paragraphs and see how it fits into the alleged plan. Yes, Your Honor, but there has to be a plan. I have to tell you that I ‑‑ There has to be what? There has to be an allegation about what the plan was. If someone ‑‑ let me just give you an example. This is not what happened. Well, no, please. No, it's not what happened. We understand. We're just taking the pleadings on his face. I know people get agitated in fraud cases and in RICO cases when we say, you know, this is the allegation. But we just have to take it at face value. I understand that. And if he says in the ‑‑ if any plaintiff says in a RICO complaint there was a murder threat, but they don't point out how that murder threat goes along with all of the other allegations of RICO, that is insufficient. I mean, this is not, frankly, the first RICO case that I've been involved with on either side. I do both sides of that issue. And I am not kidding. I could not make hide nor hair of how his allegations that people in this meeting were upset, I think they probably were. That isn't the allegation. The allegation is murder. Murder is threatened. Please face the allegation. Your Honor, I don't think that an allegation, even if they were upset enough to say something like murder, which I don't think happened. Well, no, please. You're arguing the facts. The allegation is your client threatened the plaintiff with murder in order to obtain his company. I didn't have any difficulty. I haven't been immersed in this case for more than a very short time, and I got the picture what the allegations are quite clearly. Your clients conspired to seize this company with threats to send Mr. Lyndon to jail, and when that didn't seem to work, they threatened to kill him. What didn't you understand about that? Who were they conspiring with? Each other. Your Honor, I don't know that I think that that is all that clear. And they accused their lawyer of joining the conspiracy. That's correct. They made those accusations, but I don't know that they made the accusation that the lawyers were involved in a conspiracy to murder. They made allegations that the attorneys did things that were... Conspirators in this thing don't have to agree to every act. If they're in the conspiracy and it culminates in a threat to murder, they're liable for the conspirators' act. It's not that they have to agree to each act of the conspirator. Your Honor, I think what happened here was that a business went in... No, please don't tell us that. Okay. Let me rephrase. I'm afraid you want to defend on the facts. You have to defend on the allegations. Your Honor, I think what's going on here is that businesses bought businesses and the allegations of what went on are simply not sufficient to make clear in what part of the purchase was sufficient to lead to the belief that all elements of the RICO claim were met. And when you look at it, the Copyright Act, for example, is one of the... Forget the Copyright Act. It's no good. I'll forget it. What's missing here when you allege a conspirator to take over the company by threatening imprisonment and then murder to the principals in the old company? I don't believe, Your Honor, that the way this was played made it clear that statements made... if we believe that such statements were made... Why do you do that? Of course I believe it because that's the allegation. Now tell me what is missing. What would you have liked to know in that allegation that you didn't know? You know, the time, you know, the place, you know, who made the threat. What's missing? Well, actually, Your Honor, I know that Mr. Chiganti pled that Mr. Arena made that statement. What's that? Your Honor, I know that there's the allegation that Mr. Arena made that statement. That's what you're asked to defend against. Yes. So what's missing in that? I don't, in fact, know exactly when it was made, who heard it. You may know it's made at the meeting. There's a definite date for the meeting. Have you looked at this? Yes, I have. They give you a definite date and I think even a time. So you do know it. Your Honor, I believe that it was difficult to determine whether who was present, who heard this. No, no, it's not who was present. It's who made the threat. Arena made it. How do I defend against something when I don't know? Well, what? What don't you know? Your Honor. Please tell me what you don't know. I don't know to whom this threat was directed. Yes, you do. It's made to him. I don't know how this threat impacted what was allegedly a fraudulent scheme, what fraud was supposed to occur, that he, if I was going to kill you if I get this, that's not it. This is extortion, lack of hearing. I mean, you haven't, you've stood there for five minutes and not been able to tell me what's missing. I really wonder whether you've read the allegations. I have indeed read the allegations. I'm afraid what's happened. You don't believe the allegations, so you think you can brush them off. No, Your Honor. I don't think you can brush them off. But I do believe that RICO requires more than you can assume. Well, let me give you one more chance to say, tell me what's missing. I would like to know how the parties worked together, what the allegation is supposed to be about how they worked together to perpetrate this alleged murder. Well, let's assume for the sake of argument that we've got a meeting that occurred on September 16th, your client, Irina, says, I'm calling Bernie who's waiting here. He's pissed off. He's going to throw you in jail right away. I'm giving you one last chance to avoid jail. Bernie says he will not be this patient. Do as I say or I'll destroy you both. Irina also said, do you know why I brought Tony to the meeting? He's killed before. He will do anything Bernie asks him to. He's here to take care of you if you don't do as Bernie says. And I say you'll be finished if you make Bernie angry. That's what he says. So the question is, they're trying to allege the classic extortion. They offer you can't refuse, whatever. Why doesn't that state a claim at RICO? Because what does that have to do with the purchase of the stock? He's making a threat. Oh, it's to get the stock. He's making a threat saying you're going to do these general bad things to me unless you get the stock. Well, we can read it. This is all connected at this meeting with getting a hold on the stock. How? You don't understand? Well, you must not read very carefully. I really believe that it takes more than a mere allegation of a simple statement of threat to put in place a RICO action that involves three different contracts and 31 different defendants and how all those people fit in. I think it takes more than a statement that at a meeting people said X. I think you have to show all of the intertwining elements of the RICO claim. Your Honor. But what element is missing? I mean, the district court did get far enough into this to see whether an enterprise had been plied and so forth. But what element is missing on what? He's just saying you didn't plead with specificity. I think he did not plead with specificity. And I believe that Judge Walker did get far enough into it to discuss the elements of what was missing. And it was specific as to the statements that were made and how those related back to the various allegations in the complaint. And I believe that's that. Hold on a second. I can tell you where Judge Walker was concerned. We have his order, though. We can take a look at it. And I think you better let Mr. Hollings up here. He was anxious to argue. Yes, they all were anxious. We'll allow you all time to argue, so don't worry about that. Mr. Hollings, how much time do you want? Just a few minutes, Your Honor. I appreciate that. May it please the Court, Byron Hollings representing what is known as the attorney defendants in this matter. Am I loud enough for the justices? Yes. For me anyway. Thank you. I think it's quite clear that in looking at these three complaints and the roadmap that Justice Walker, Judge Walker, gave the plaintiffs to set forth exactly what it is that was needed, that from the first complaint through the second amended complaint, this is a disheveled bunch of disinformation and not useful to the defendants to decide what is being done to whom, by whom, when, and where. Yes, Mr. Chiganti went ahead and separated the acts and separated the legal information, as he said here before Your Honors, but that is not useful. In fact, it creates more of a disheveled basis on which somebody can look at a complaint and say, I know who I am, what I'm doing in this instance, what I'm alleged to have done, what caused my participation in this act, and what I did wrong. That is not in the 58 pages, 275 or 290 paragraphs. It's difficult to look at what is here to say, I know how to defend against this. It is true that you can go through this and try to hunt for each allegation, but that isn't what we're required to do. It is up to the plaintiff to set forth in specific terms each count, each factual allegation, and why that person did something wrong. There are serious allegations here. Why should the sanction be to dismiss the case? There are serious allegations. There's no argument about that. But if you look at the RICO count, the RICO count itself lumps every defendant, or at least most of the defendants. No, but I'm asking you, why should the sanction? He didn't keep the page on it. He didn't do what the judge asked him to do. Why should we dismiss the case? Because this is the third time he had the right to do this. Very first time. You have to proceed on the basis that plaintiff's counsel knows the law, knows what he is required to plead, and how to get beyond a 9B or a motion that says, you didn't plead enough specificity for fraud. He didn't do that in his original complaint. That's the first time. Then he's told by his district judge, hey, this is what you need to do. He is given the paperwork from opposing counsel saying, hey, this is what you need to do. He ignores that. He admitted that here before your honors. Then he goes ahead and expands not only the complaint, he adds more people and more counts. Right. But as far as your clients are concerned, you knew exactly the facts he was pleading. I mean, there was no mystery about the factual allegations. They're in great detail about what the factual allegations are. Now, the legal significance is another question. I agree with you that there's a cognitive, it lacks cognitive organization in terms of saying, here's how it fits the theory, and I understand that. But in terms of what he was alleging your clients did, there's really not much of a mystery here. But the mystery is how do you get from A to B? Isn't that a matter for summary judgment in the sense of saying, look, we've got theories untethered to facts. We have a lot of facts. You know what you've got to defend against. You've got to say, no, my client didn't do that. You go to summary judgment and say, well, not if it matches up. It's tough. The struggle is with the pleadings, you've got facts here, theories here, and Mr. Chagany wants us to put them together for us. But you're defending. You knew pretty much where he was headed with this. But if you look at one of the facts, one of the facts that even Judge Walker brought out is that there was a conflict of interest on a certain date, if I remember correctly, it was September of 2002, of which the plaintiffs were unaware. But within that complaint, that contradicts the actual facts of what happened so that they already knew that the conflict existed before the date stated within the complaint. The problem exists is that there are so many facts that there is no consistent thread of what is happening by whom and where. That is the whole problem with this. It would be simpler to have just drafted a mere statement of what somebody did when and where. But he didn't do that. So, yeah, there are facts. I have no argument with that. But the facts played are contradicted throughout this pleading. Counsel, can we affirm the judgment of the district court merely on the grounds that counsel failed to follow the instructions here? Independent of or irrespective of whether we actually think that the paragraph 70 and 71 are not the predicate for whatever it is, 273L, or whatever that paragraph was that dealt with extortion. H and I, threats and extortion. I believe you can, Your Honor. Absolutely. What would be the authority for that? The authority is that he was given the opportunity twice before, along with the instructions, and that enough is enough. I do my clients. Yeah, that's pretty tough under the local rules to say that, though, I think. But the case law is not there. The facts are not there. As we get further into this, it gets deeper and deeper and more of a mire. And I notice that we're beyond my time, and I know that there is another lawyer that does wish to speak. No, we're going to let everybody speak who's here. Is there any additional questions you all have for me? No. So I think next up is. . . Thank you, Your Honor. I'm not. . . Who's up next? Mr. . . . Thank you, Your Honor. May it please the Court, David DeJesus from Reed Smith, representing Reed Smith and James Berg this morning. Who will you represent? Reed Smith and James Berg, two attorney defendants. I will be very brief. Reed Smith and James Berg were dragged into this case 18 months after the case started. It really is an afterthought to the plaintiff's second amended complaint. We are named in count 31 of the 31-count complaint and only under the state law claim of legal malpractice. Now, facing a motion to dismiss these claims, the appellants tried to add Reed Smith and James Berg to their already existing RICO and fraud claims via a motion to amend and an attempt to reopen discovery. Now, the trial court, as you know, denied both of those motions, and that's the limited issue I would like to address this morning. I don't want to retread any ground that we've already spoken about here today. The trial court, of course, did not abuse its discretion in this regard. There are three factors, I think, that are dispositive of the motion to amend issue. The first, of course, is futility. As we've seen here before, any attempt to amend the complaint to add Reed Smith and James Berg to the RICO and fraud claims would have been futile because they fail to state the requisite conduct with particularity, all the other nine B factors that we've talked about before. So futility is one. The second issue, and it's an equally important issue, is that the amendments were made with undue delay. Let's take a look at the procedural history here, and this is what the trial court said in its ruling as well. The request was made 22 months after the case began. As part of its opposition to Reed Smith's motion to dismiss, it was made when discovery, and I understand that there was, it's in question whether discovery was complete, but certainly substantial discovery had been completed and there was some contemplation that there would be further discovery. But the bottom line is there was enough time for the appellants to conduct discovery to find out if Reed Smith and James Berg should be added to the RICO and fraud claims, and they didn't do it. Also, there were, as we know, two attempts to amend the complaint that didn't comply with the trial court's order. So what we're looking at here is a request made to amend the complaint to add Reed Smith and James Berg, again, 22 months after the case started. That is simply unacceptable, and under no stretch of the rules can we consider that a timely amendment. The last factor, of course, is bad faith, and I would submit that there is a very strong case here to be made that the amendments were made in bad faith. Again, we've talked about the disregard of court orders, we've talked about disregard of local rules, and it's not a stretch to see that the amendments that the attempted amendment here, in other words, the attempt to add Reed Smith and James Berg, was merely made in the hope that it would rescue these RICO and fraud claims from dismissal and in the hope that it could extend the discovery cutoff to wherever it would be. So in short, the appellants had every opportunity to state their case for fraud and racketeering, they had every opportunity to add Reed Smith and James Berg to this case, and they had every opportunity to conduct the discovery that they believed they needed to do to state a viable claim at every step of the way they didn't do it. Given the record here before this Court, given this record, there is no way that the trial court abused its discretion in saying that enough was enough, denying the motion to amend and denying the request to reopen discovery. Unless the Court has any questions, I will submit on that. Thank you, counsel. Mr. Blackman. Honorable Judges, John Blackman, Farskin Blackman, on behalf of the CPA defendants, Leinbach and Stressor, I'm willing to submit on the papers before you. Thank you. Mr. Shkani, you used up your time in the first, but I'll give you two minutes for about a minute. Thank you, Your Honors. I just want to touch, one of the questions from the panel was whether there were other elements of the RICO that were properly alleged or the district court had an opportunity to look into those other elements like an enterprise and all that. That was in the record. There was a ruling by the district court document 139 dated May 23rd of 2005. It's at pages 57 and 58 of the record on appeal. The district court actually states that there is a sufficient allegation of an enterprise name. Second point I would like to address is the discovery is closed, and I made a motion to reopen the discovery, but the defendants opposed it and I lost on the motion. To say, for them to now say that discovery, they needed to do some more discovery is not the right thing to say. How did you get to the point where discovery was closed without taking a single deposition? They wouldn't give me a single document, Your Honor. We had this Judge Brazil, Magistrate Judge Brazil is the discovery referee, and they wouldn't give me anything. Repeated obstruction. Did you notice depositions? We didn't because Magistrate Judge Brazil I'm sorry, you did not notice depositions? No, Your Honor, because Judge Brazil said first do the documents and then do the depositions. Everybody was under order not to do depositions until the documents were produced. And they did not. But nobody ever agreed that all the documents were produced to people's satisfaction. Is that the state of the record? That's the state of the record. And the district court's discovery deadline had passed. Yes, Your Honor. I think what they were saying was it was an open question whether or not the district court was going to allow a reopening of discovery if, in fact, he allowed you to leave to amend again. I think that's all they were saying. That came up and I actually asked the district, I filed a motion to reopen the discovery in light of the newly added defendants and whatnot. The district court denied it. One final point the counsel made for Reed Smith and the Jim Berg defendants said, I would like to explain. One of the persons that was affiliated with Mr. Paul Arena, they actually, Jack Robinson, he became the when Lou Lim was displaced as the CEO of Supercaller, President and CEO of Supercaller, Paul Arena installed a person by name Jack Robinson. Subsequently, Paul Arena kicked Jack Robinson out of the company, did not pay him. He had to, he filed some lawsuit or arbitration or something. They settled it out of court. Jack Robinson got mental and he joined an asylum or something, some house in Berkeley here. After he became, after he recuperated sometime in Nepal. Mr. Shikhani, are you straying from the record here? Is this in the record? I'm coming to the point which was in the record. He gave his own argument. We're not going to go out and find him today. I mean, what you're talking about is not in the record, I think. Not in the record. What I'm getting to is in his e-mail collection, I found critical e-mails written by Mr. James Berg. And that was the basis for adding James Berg to the complaint. And when they say it was 22 months later, there was a reason for the 22 months of delay, because we discovered this information after pursuing this gentleman wherever he was. But your state law claims against Reed Berg are all state law claims, right? At the moment, yes, Your Honor. So the district court would have to exercise supplemental jurisdiction in order to resolve them, right? Yes, Your Honor, unless the leave is granted to amend on the other claims. Okay. Thank you, Your Honor. Thank you very much for your arguments. The case is heard, will be submitted, and we'll be in recess for the morning.
judges: Noonan, Thomas, Bybee